**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CRIMINAL CASE NO. 5:26-MJ-3193-EBA

IN THE MATTER OF CRIMINAL
COMPLAINT FOR JASON R. BAIN

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

* * * * * * * * *

I, Stanley Williams, a Task Force Officer with the Federal Bureau of Investigation ("FBI"), having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a University of Kentucky Police Department ("UKPD") employee and Task Force Officer ("TFO") assigned to the FBI Child Exploitation and Human Trafficking Task Force and have been since January 2020. I am authorized to investigate violations of federal law and am sworn to investigate federal crimes that apply to Child Pornography and Child Exploitation. Prior to becoming a TFO, I worked as a patrol officer with UKPD, investigating various state crimes that occurred on the University of Kentucky's campus in Lexington, Kentucky, including crimes of a sexually violent nature. Since becoming a TFO, I have reviewed training material, attended training sessions, and discussed investigative techniques pertaining to child sexual abuse material, sextortion, and child exploitation. I have been certified by the FBI in being an Online Covert Employee, which allows me to conduct online investigations and communicate with individuals

who possess, distribute, and produce child sexual abuse material as well as individuals who seek to meet with or transport minors for sex.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all knowledge about this matter.

3. I am investigating the criminal activities of Jason R. Bain. Based upon the information obtained in the investigation and as set forth below, Bain resides in a home at 4289 Hampton Rdg, Lexington KY 40514, and the facts as set forth in this Affidavit, there is probable cause to believe that Bain accessed with intent to view and possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

## STATUTORY AUTHORITY

4. This investigation concerns alleged violations of 18 U.S.C. § 2252(a)(4)(B). In short, 18 U.S.C. § 2252(a)(4)(B) prohibits a person from knowingly possessing or accessing with intent to view any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or that has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if (i) the producing of such visual depiction involves the use of a minor engaged in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

## PROBABLE CAUSE

5. On March 2, 2023, Lexington Police received a Cybertip (CT) number 15630477 from the National Center of Missing and Exploited Children (NCMEC). The report was created by Meetme.com, an online social network service. The company was reporting possible abuse of a 7-year-old girl. Meetme.com provided the following information regarding the subscriber whose activity prompted the report to NCMEC (the "reported subscriber"): The email address of the user is "kybiguy@yahoo.com"; the screen/display name is "Lex"; and the Internet Protocol ("IP") address captured by Meetme.com is 166.196.103.21.. Meetme.com provided messages between the reported subscriber and another unknown subject, including these messages sent by the reported subscriber account, Bain:

a. "hi, are you into closet bi guys/crossdressers/sissies/preteens"

b. "my stepbro fucked me when i was 9, but now he let's me fuck his daughter and she's 7"

c. "are you into preteens or fucking boys in the ass".

6. Meetme.com was able to provide a date of birth for the registered user, 10/22/1999. Meetme.com also provided the user's registration location of Lexington, Ky 40505. The account was created on 10/22/2022 using IP address 166.196.103.9, which is associated with AT&T Wireless. This IP address geolocated to Philadelphia, but Meetme.com provided the device type and latitude and longitude coordinates for Fayette County, KY.

7. On March 3, 2023, Lexington Police sent an emergency disclosure to Yahoo for subscriber information pertaining to kybiguy@yahoo.com, due the nature of the private messages. Yahoo provided the following:

Mail Name kybiguy@yahoo.com
Account Status active
Registration IP Address 69.174.167.201
Date 2021-06-01T02:09:28.000Z
Full Name B Pu
Recovery Phones +18592291406 Verified on: 2022-02-04T01:32:15Z

8. Lexington Police used open-source tools and found Jason Bain was the user of 85992291406. After learning his name, Lexington Police connected Jason Bain with the cybertips the ICAC unit received. On March 16, 2023, Lexington Police attempted to contact Jason Bain via telephone but he did not answer or return the call.

9. On May 26, 2023, Lexington Police contacted Kentucky State Police Electronic Crimes Branch after finding Jason Bain is connected to an active KSP case. KSP was able to confirm they executed a search warrant in Shepherdsville, Ky for another suspect. And during the examination of that suspect's devices, seized by KSP, the examination shows conversations and the exchange of Child Sexual Abuse Material (CSAM) with a number 85992291406, Jason Bain.

10. On June 9, 2023, KSP provided Lexington Police digital evidence from the KSP-executed search warrant in Shepherdsville. The conversation between the Shepherdsville suspect and 85992291406 was located. On February 25, 2023, CSAM was sent by 85992291406to the KSP suspect. Lexington Police documented the following CSAM images sent by 85992291406.

a. "__Library_SMS_Attachments_31_01_DF5D083A-4CC4-43F6-A1C9-A533E398F376_123_1.jpeg" – A picture of a female, approximately 5-7 years old on her hands and knees on a bed with her pants pulled down exposing her bare vagina and anus to the camera.

b. "__Library_SMS_Attachments_a5_05_B8AB1827-C583-49CF-9B7B-CCD39F8A07DA_123_1.jpeg" – A picture of a female, approximately 5-7 years old on her hands and knees on a bed with her pants pulled down exposing her bare vagina and anus to the camera from a different angle.

c. Prior to 85992291406 sending the above CSAM he sent the following text on 2/25/2023 at 18:35:30 UTC: "I have a pic of this little girl I used to play with if you want it...shoes her pussy tho."

11. Throughout the conversation 85992291406 discussed having sex with a minor with others.

12. On June 28, 2023, Lexington Police served AT&T a search warrant for information associated with the phone number 8592291406.

13. On June 29, 2023, AT&T responded to the search warrant and provided the subscriber information of 8592291406 is a Donald Bain. The documented address is 4289 Hampton Rdg, Lexington, Kentucky 40514. Law enforcement confirmed with AT&T the user of the 8592291406 is Jason Bain, and the account has been active since July 2, 2022.

14. SMS messages were observed by law enforcement to have been sent on February 25, 2023, matching the records provided by KSP for their CSAM case. AT&T provided device information showing that a Samsung SM A03 was active on April 8, 2023.

15. On July 5, 2023 Lexington Police conducted a traffic stop and executed a search warrant for Jason Bain's person, vehicle and phones. Two phones were located, one on his person, which is a Samsung A03s, and another in the center consol of his vehicle.

16. One of the devices seized from Jason Bain was a Samsung Zflip, which was sent to the United States Secret Service Cleveland Forensics Lab to be unlocked and extracted because local tools could not unlock the device.

17. The device returned to Lexington Police on December 8, 2023. United States Secret Service got a full extraction from the device. Lexington Police observed multiple artifacts on the device. The following are the file names:

1_5055672717848609563.mp4

1_5055428286964826957.MP4

1_5057657241847464630.MP4

VideoCapture_2

0230508-033457.jpg

1000000221.jpg

1000000222.jpg

1000000226.jpg

1000000225.jpg

1000000224.jpg

1000000223.jpg

1000000227.jpg

5057973591958618744_-569425687.jpg

5058086931850593042_1835082501.jpg

5057565668849746696_-370578798.jpg

5055387519135253492_653649501.jpg

5057626597255808102_-241919364.jpg

18. The files listed above all contain pubescent and prepubescent males and females engaged in various sexual acts. Several videos show pubescent females, approximately 11-13 years old, engaging in sexual intercourse with adult men. These files were located as cached, thumbnail, and/or on the physical device.

19. The telephone number associated with the device is 85922291406.

20. Conversations with a "Adi Cipriano" were located on the device. Relevant excerpts are noted below:

JB: "have you ever hooked up with kids?"

AC: Nope! I don't like them. But I love watching.

AC: Have you?

JB: I had a lot of stuff happen when I was growing up…involving myself, stepbro, stepsis and younger cousin

JB: (Sent video) JB: Your videos are really hott! Ide love to feel you grind/fuck my ass with your clitcock. Have you ever used a pump

AC: I've used twisted suckers but no pumps yet!

JB: I've seen my cousin jack a horse off, she said she fucked her dog, but idk

JB: What age do you like to watch the most

JB: (Sent video)

JB: That one is me, I have a video of a young girl somewhere J

B: But, yes…when I was a teen, I hooked up with my much younger female cousin a couple times

AC: I like toddlers and younger the most. I've watched a lot of bestiality so that's interesting to me.

AC: And nice

JB: Ya, toddlers are a great age to watch. Would you ever suck/fuck a dog or horse or anything

21. KIK messages were located and the username "Lex Guy"/"859lexguy" sent a message, "Gotta make sure I don't accidentally send you any illegal Porn" to another user.

22. On December 22, 2023, Bain was arrested outside of his home at 4289 Hampton Ridge, Lexington, KY. He was charged with 2 counts of distribution of matter portraying a minor in a sexual performance, 1 count of unlawful use of electronic means to induce a minor to engage in sexual activities, and 16 counts of possession of matter portraying a minor in a sexual performance.

23. A new device was located on his person and seized the day of his arrest – a Samsung Zflip. Lexington Police obtained a search warrant. The device was not passcode protected and Lexington Police was able to obtain a full extraction. The device contained CSAM images sent to Bain by another individual via KIK. The following message was sent with the CSAM: "Would you be okay with playing with someone that young."

24. On August 5, 2026, Lexington Police arrested Bain outside of his home for failure to appear. His next court date is August 27, 2026. During his arrest a mobile device was located on his person and seized by law enforcement.

25. Based on my training and experience, and the information uncovered in this investigation, I believe there is a high likelihood that Bain used multiple digital devices to possess, receive and distribute CSAM using multiple platforms such as KIK and Telegram. Jason Bain has a consistent history of accessing CSAM on his phones and conversing about CSAM on his phones. In July 2023, Lexington Police seized and searched the first phone, and when they made contact with Bain after the first seizure they collected another phone which also had CSAM on it in December of 2023. It is reasonable and reaches the standard of probable cause that Bain consistently uses/and is using his telephone to view CSAM and converse about CSAM via messaging on the most recent phone seized while he was out on bond in his state case.. Bain was arrested for failing to appear for Court on August 6, 2026, and a new citation involving cruelty to animals, but was released on August 5, 2026, by Judge Julie Goodman, Fourth Division Fayette Circuit Court.

26. Based on my previous investigative experience related to child sexual abuse material investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who possess or access with intent to view child sexual abuse material:

a. Individuals who possess or access with intent to view child sexual abuse material may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Individuals who possess or access with intent to view child sexual abuse material may collect sexually explicit or suggestive materials, in a variety of media, including photographs, digital images and videos, magazines, motion pictures, books, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts or to refresh their memories of prior sexual child abuse activities they have committed.

c. Individuals who possess or access with intent to view child sexual abuse material typically possess and maintain their original copies of child pornographic material, that is, their pictures and videos in the privacy and security of their home, person, vehicle, workplace, or some other secure, web-based or cloud-based, location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, films,

photographs, magazines, correspondence, books, mailing lists, and child erotica for many years. Many of these collections can be found on external media storage devices that are easily concealed in the home, a vehicle, or the workplace, away from family members or co-workers who could stumble upon the collection. The collections may also be concealed on smartphones in hidden applications or albums, or concealed on external storage devices.

d. Likewise, individuals who possess or access with intent to view child sexual abuse material often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer, web-based program, cloud-based program, or secure third-party application on a mobile device or computer. These collections are often maintained for several years and are kept close by. Physically they can be kept at the collector's residence, a storage building(s) or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly. Digitally they are kept on the device(s) the individual most frequently has on their person, or a device only they know the password to. Many traders and collectors of child sexual abuse material will ensure their collection, or at least part of their collection, is in a location they have frequent or easy access to and maintain "eyes on" the collection at all times. In your affiant's training and experience, collectors of child sexual abuse material will either have a location in their residence, in their personal vehicles, or at work, where they maintain their non-cloud-based collection.

e. Individuals who possess or access with intent to view child sexual abuse material also may correspond with and/or meet others to share or trade information and materials. They rarely destroy correspondence from other child sexual abuse material distributors/collectors. They conceal such correspondence as they do their sexually explicit material. They often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child sexual abuse material. Sometimes these lists are kept physically, but in more and more cases, the lists are maintained on a mobile or electronic device, or within an application or web-based program (like a friends list on a social media application).

f. Individuals who possess or access with intent to view child sexual abuse material also can, and often will, maintain a separate mobile device for their collection, storage, and correspondence regarding child sexual abuse material. These devices are usually kept hidden from family members, partners, and co-workers, in locations either only the collector has access to, or location others have limited access to (for example, an outbuilding, workshop, file cabinet drawer, vehicle if each member of the family has their own, or locked safe). These locations can also be storage locations for any external devices (mentioned above) that may contain a collection.

g. Individuals who possess or access with intent to view child sexual abuse material prefer not to be without their child sexual abuse material for any

prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child sexual abuse material throughout the world.

h. Those individuals who possess or access with intent to view child pornography and are concerned about detection from law enforcement frequently use the dark web to increase anonymity while accessing or obtaining CSAM. Some dark web forums dedicated to child pornography and/or the sexual abuse of children closely follow child pornography prosecutions and provide advice to offenders on how avoid detection. Methods of avoiding detection include but are not limited to (1) not maintaining a collection of CSAM, or (2) only maintaining a collection of CSAM that can quickly and easily be destroyed. Thus, while many offenders feel the need to maintain a collection of CSAM and keep that collection close, some access or obtain their CSAM from the dark web when the moment of sexual gratification arises and delete the content after the moment of sexual gratification passes. However, child pornography or dark web artifacts may still remain on an electronic device.

i. Individuals who possess or access with intent to view child pornography may also commit hands-on offenses if the opportunity arises. A study of 155 child pornography offenders in an intensive, residential, sex offender-specific treatment program (SOTP) at a medium-security federal prison revealed that, while 74% of offenders had no known hands-on victims at the time of

sentencing, 85% admitted they had at least one hands-on sexual offense at the end of treatment. Michael Bourke & Andres E. Hernandez, *The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, 24 Journal of Family Violence 3 (2009), 183-191, at 186-87.

j. Individuals who possess or access with intent to view child pornography, having a sexual interest in children that they would like to act upon, often engage in "grooming" with minor children. Grooming "describe[s] a variety of behaviors that appear calculated to prepare a child for a future sexual relationship." *United States v. Fox*, 600 Fed. Appx. 414, 419 (6th Cir. 2015) (unpublished) (citations omitted). "The ultimate goal of grooming is the formation of an emotional connection with the child and the reduction of the child's inhibitions in order to prepare the child for sexual activity." *See Id.* Based on my training and experience, grooming often includes first forming a friendship with the child; showering the child with attention, compliments, pet names, and gifts; exchanging non-explicit pictures or videos; and then flirting, discussing sexual knowledge or experience, discussing sexual fantasies, exchanging sexually explicit pictures or videos, and planning in-person sexual activities. Computers and smartphones often contain evidence of grooming, because many of these conversations occur by text or instant messaging, particularly if the child is geographically remote from the offender. If the person grooms a child through the use of gifts, electronic

devices may also contain financial transaction information relating to those gifts. Grooming may also escalate to enticing a minor to engage in a sex act in exchange for a gift or something of value. As with evidence of grooming, evidence of such enticement is often found on a person's electronic devices.

27. I believe that Bain shares these characteristics because of the conversations of viewing sex with minor expresses a particular sexual interest in prepubescent children—a known marker of pedophilia.

28. Bain was released from state custody today, August 27, 2026.

29. For the reasons stated herein, I submit that this affidavit supports probable cause for a criminal complaint charging Bain for a violation of 18 U.S.C. § 2252(a)(4)(B). The investigation indicates Bain has possessed images of child pornography on multiple occasions and multiple devices.

Respectfully submitted,

Stanley Williams, by EBA

Det. Stanley Williams
Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 28 day of August 2026.

Signed By:
Edward B. Atkins EBA
United States Magistrate Judge

Honorable Edward B. Atkins
United States Magistrate Judge
Eastern District of Kentucky